340 So.2d 1001 (1976)
Palace Mae Guilfou BLANCHARD, Individually and as the natural tutrix of Joseph Carroll Blanchard et al.
v.
Paul RODRIGUE et al.
No. 10873.
Court of Appeal of Louisiana, First Circuit.
September 20, 1976.
Rehearing December 20, 1976.
Writs Refused February 11, 1977.
*1002 Glynn A. Long, Donaldsonville, and James George, Baton Rouge, for plaintiffs and appellants.
Herman C. Hoffmann, Jr., Monroe & Lemann, New Orleans, for all defendants.
Edward C. Seghers, Kenneth E. Barnette, Seale, Smith & Phelps, Baton Rouge, for Paul Rodrigue, Frank Hollins, Thibaut Leasing Company, Thibaut Oil Company, Thibaut's Individually, General Acc. Fire & Life Assur. Corp., Ltd.
Calvin E. Hardin, Jr., Baton Rouge, for Interstate Fire & Casualty Co.
Edward Rice, Jr., New Orleans, for Evan Hall Sugar Cooperative, Inc. and Bituminous Casualty Corp. and appellants.
Frank Fertitta, Baton Rouge, for State Farm Mutual Automobile Ins. Co.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
CHIASSON, Judge.
This appeal has been taken from a judgment of the District Court in favor of the survivors of Carroll Blanchard and against aul Rodrigue, Evan Hall Sugar Cooperative, *1003 Inc., and Bituminous Casualty Corporation.
The Trial Judge in his reasons for judgment summarized the events prior to the trial on the merits as follows:
"On the morning of November 27, 1972, at about six o'clock A.M., Frank Hollins was driving a 1964 Chevrolet cane truck in the direction of south along Louisiana Highway No. 308. This truck was owned by Thibaut Leasing Company and was leased to Evan Hall Sugar Cooperative, Inc. for the purpose of hauling sugar cane during the grinding season. When the truck reached a spot near and within the city limits of Donaldsonville, Louisiana, Hollins noticed that his truck was pulling to one side. Upon alighting, he discovered that the right front tire was flat. Because the shoulders on both sides of the highway at this location were extremely narrow or non-existent, and bordered by deep ditches, he was forced to park his truck within and completely blocking the southbound lane of travel. Highway 308 is a standard Louisiana two lane hard surfaced highway.
"The Hollins vehicle had been stopped for a short period of time in this position when it was approached from the rear by a 1960 Chevrolet cane truck driven by Paul Rodrigue. This truck was also owned by Thibaut Leasing Company and leased to Evan Hall Sugar Cooperative, Inc. On the previous night both drivers had been instructed by a supervisor of their employer, Evan Hall Sugar Cooperative, Inc. to proceed in the morning to the Belle Terre Plantation to load sugar cane destined for the Evan Hall mill.
"Paul Rodrigue seeing the truck blocking his lane of travel made no effort to stop but turned left into the passing lane. When the front of his truck was about opposite the door of the stationary vehicle a collision occurred between his truck and the approaching 1972 Chrysler owned and operated by Carroll Blanchard.
"Carroll Blanchard had left his home and was proceeding northwardly in the northbound traffic lane of said Highway 308, when he collided with the truck driven by Paul Rodrigue. The collision took place entirely within the northbound traffic lane of said highway opposite the truck of Frank Hollins. Neither the approaching vehicle nor the passing truck left skidmarks on the highway. Mr. Blanchard was knocked unconscious by the force of the collision and died still jammed in the front seat some 15 minutes after the accident without regaining consciousness.
"This wrongful death and survival action for damages was brought originally by his widow, Mrs. Palace Mae Guilfou Blanchard, individually, and as natural tutrix of the minors, Joseph Carroll Blanchard, Mitchell Blanchard and Michael Blanchard. The plaintiff sues Evan Hall Sugar Cooperative, Inc., (hereinafter called Evan Hall), Paul Rodrigue, Frank Hollins, Thibaut Farms, Inc., Thibaut Oil Company, Thibaut Leasing Company, James H. Thibaut and Thomas O. Thibaut.
"By a supplemental petition, Edward G. Blanchard, Bruce G. Blanchard and Mary Ann Blanchard, wife of Dale Cassard, the major children of Palace Mae Guilfou Blanchard and Carroll Blanchard, joined in the said suit and also pray for damages for the alleged wrongful death of their father, said Carroll Blanchard.
"In addition to the respondents named in the original petition, the plaintiffs add as defendants, James A. Thibaut, William Henry Thibaut, Vivian Elizabeth Thibaut Scott, Charles Lloyd Thibaut, James D. Thibaut, Betty Thibaut Smith and Dr. David D. Thibaut. The petitioners also sue the following insurance companies: Bituminous Casualty Corporation, General Accident Fire and Life Assurance Corporation, Ltd. and Interstate Fire and Casualty Company.
"A motion for summary judgment seeking dismissal of the suit was denied as to defendants, Thibaut Leasing Company, James Thibaut, Thomas Thibaut, James A. Thibaut, William H. Thibaut, Vivian Thibaut Scott, Charles L. Thibaut, James D. Thibaut, Betty Thibaut Smith and *1004 David Thibaut and was sustained as to defendant, Thibaut Oil Company.
"By intervention, State Farm Mutual Automobile Insurance Company, insurer of Carroll Blanchard, seeks recovery of the sum of $3,088.00 against Evan Hall, Frank Hollins, Paul Rodrigue, Thibaut Leasing Company, General Accident Fire and Life Assurance Corporation and Bituminous Casualty Corporation for property damage to the automobile of Carroll Blanchard paid by it as subrogee.
"To these demands all the defendants filed answers denying liability and pleading, in the alternative, the contributory negligence of Carroll Blanchard ..."
After a trial on the merits the Trial Judge determined that the negligence of Paul Rodrigue was the sole proximate cause of the accident. Accordingly, judgment was rendered against Paul Rodrigue, his employer, Evan Hall., and Evan Hall's insurer, Bituminous Casualty Corporation. The Trial Judge awarded Mrs. Blanchard $75,000.00 for loss of support and $25,000.00 for loss of love and affection, the minor children $25,000.00 each for loss of support and $15,000.00 each for loss of love and affection, the major children $10,000.00 each for loss of love and affection, all of the plaintiffs $1,985.35 for funeral expenses and State Farm Mutual Automobile Insurance Company, intervenor, $3,088.00 for damage to the automobile. The Trial Judge did not award damages for pain and suffering or for loss of inheritable estate.
The plaintiff's suit against Frank Hollins, Thibaut Farms, Inc., Thibaut Oil Company, Thibaut Leasing Company, James H. Thibaut, Thomas A. Thibaut, James A. Thibaut, William Henry Thibaut, Vivian Elizabeth Thibaut Scott, Charles Lloyd Thibaut, James D. Thibaut, Betty Thibaut Smith, Dr. David Thibaut, General Accident Fire and Life Assurance Corporation, Ltd. and Interstate Fire and Casualty Company was dismissed by the Trial Judge.
Defendants, Paul Rodrigue, Evan Hall, and Bituminous Casualty Corporation, appealed this decision contending that:
"1. The Court erred in finding Mr. Carroll Blanchard not negligent and in awarding damages to the plaintiffs.
"2. The Court erred in the amount of damages awarded to the surviving spouse and three minor children for loss of support.
"3. The Court erred in failing to hold Thibaut Leasing Co. and/or its individual partners responsible for the actions of Paul Rodrigue.
"4. The Court erred in holding Bituminous Casualty Corporation the only insurer responsible for the actions of Paul Rodrigue."
The plaintiffs answered, contending that:
"1. The Court erred in not rendering judgment against Frank Hollins, Thibaut Farms, Inc., Thibaut Leasing Co., Thibaut Oil Company, James H. Thibaut, Thomas A. Thibaut, James A. Thibaut, William Henry Thibaut, Vivian Elizabeth Thibaut Scott, Charles Lloyd Thibaut, James D. Thibaut, Betty Thibaut Smith, Dr. David D. Thibaut, General Accident Fire and Life Assurance Corporation, Ltd. and Interstate Fire and Casualty Company.
"2. The Court erred in the amount awarded to the plaintiffs in certain elements of damage.
"3. The Court erred in not awarding damages for certain elements of damage which should be compensated"
By Joint motion the plaintiffs' appeal has been dismissed as to Thibaut Oil Company and to Thibaut Farms, Inc.
The Trial Judge's stated reasons for holding the negligence of Paul Rodrigue as the proximate cause of the accident were:
"There is no doubt in the mind of the Court that Paul Rodrigue was negligent in attempting to negotiate the passage of the stopped vehicle without ascertaining that the passing lane was clear of approaching traffic. Since Paul Rodrigue testified that he saw the stopped truck when he was more than a half block away and had ample distance in which to stop or avoid the truck, the negligence of Hollins in stopping in the southbound *1005 lane and his failure to put out reflectors should be deemed remote causes. The fact that neither Blanchard or Rodrigue stopped also leads to a belief that Hollins had failed to place reflectors before the accident. However, either with reflectors or without reflectors Rodrigue was under a legal duty to be certain that the passing lane was clear of approaching traffic. His failure in this respect constitutes the proximate cause of this collision.
"The defendants, alternatively, contend that Mr. Blanchard was guilty of contributory negligence because the absence of skidmarks indicate that he must have been travelling at an excessive rate of speed and for that reason failed to take any steps to avoid the truck of Paul Rodrigue approaching in his lane of travel. The Court does not subscribe to this view. A cane truck is a large vehicle which completely blocks the view of all vehicles immediately to the rear of it. The absence of skidmarks and the point of impact is almost conclusive evidence that the overtaking truck verred suddenly from behind the parked vehicle and into the passing lane. Blanchard could not drive to his left because of the parked truck nor could he drive to the right because of the narrow shoulder and deep ditch. In this sudden emergency a collision was inevitable even at normal speed."
The record contains evidence which supports the conclusions of the Trial Judge. In the absence of manifest error the determinations of the trier of fact will not be disturbed on appeal.
The Trial Judge awarded Mrs. Blanchard, individually and as natural tutrix of her minor children, $150,000.00 for loss of support. The defendants contend that this award, based upon income attributable to the deceased and his work-life expectancy, is excessive.
The settled jurisprudence of this state is that damages for loss of support are speculative in nature and cannot be calculated with mathematical certainty. The most a Court can do in such cases is to exercise sound judicial discretion and award an amount which, considering all the circumstances, seems just to both parties and is not unduly oppressive to either. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968); McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183 (1961).
Factors which should be weighed in determining the amount due for loss of support include the decedent's present earnings, his age and life expectancy, his work-life expectancy, the possibility of a decrease or increase in his earnings, the decedent's job security, the nature of decedent's work, his health, his relationship with his family, his personal expenses and his past work record. Other factors are the surviving spouse's age and health, the minor children's age, and the effects of inflation and the need to discount future earnings to a present day amount. In short, all factors relevant to a determination of the amount of the loss of support due to the premature demise of the decedent should be considered.
At the time of his death Mr. Blanchard was 53 years of age, in good health and earning approximately $8,500.00 per year as a farmer and storekeeper. He had a life expectancy of 21.25 years and a worklife expectancy of 13.3 years. The decedent owned his own farm and a grocery store. His relations with his family were excellent and he had a wife and three minor children, two age nine and one age twelve, dependent on him for support.
While the Trial Judge's award of $150,000.00 for loss of support may be high, we do not find that the awards in the judgment, $100,000.00 for the wife, $40,000.00 for each of the three minor children, and $10,000.00 for each of the three major children, to be excessive or inadequate. While awards of damages should be based upon the facts which exist in each particular case and not solely on a consideration of uniformity, we do refer to prior cases to determine whether there has been an abuse of the Trial Court's discretion in making *1006 awards. Barnett v. Trinity Universal Insurance Company, La.App., 286 So.2d 770 (2nd Cir. 1973). A comparison of the overall award in this case with awards in other cases indicates that there has been no abuse of discretion by the Trial Judge.
The truck driven by Paul Rodrigue was leased by Evan Hall from Thibaut Leasing Company. The vehicle was under the exclusive control of Evan Hall and was operated by its employee, Paul Rodrigue. The relationship between Thibaut Leasing and Evan Hall was one of bailment. Because the negligence of a bailee cannot be imputed to the bailor, Thibaut Leasing Company and its individual partners cannot be held liable for the actions of Paul Rodrigue. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
Insurance coverage for Evan Hall was provided by Bituminous Casualty Corporation under two policies; Policy No. GA 693476, a General Liability Automobile Policy, with bodily injury liability limits of $100,000.00 per person and $300,000.00 per accident and property damage liability limits of $100,000.00 per accident; and Policy No. UL 4993, a Comprehensive Catastrophe Liability Policy with a liability limit of $1,000,000.00 as excess coverage over the underlying policies.
Insurance coverage for Thibaut Leasing Company was provided by General Accident Fire and Life Assurance Corporation, Ltd. and Interstate Fire and Casualty Company. Policy No. CA 26 444 28, a Combination Automobile Policy, issued by General Accident, provided bodily injury coverage of $5,000.00 per person and $10,000.00 per accident and property damage coverage of $5,000.00 per accident. Policy No. 183-093689, an Excess Liability Policy issued by Interstate Fire, provided bodily injury coverage of $95,000.00 per person over the $5,000.00 coverage of the underlying General Accident Policy and property damage coverage of $95,000.00 per accident over the $5,000.00 underlying policy. Thibaut Leasing is also covered under an umbrella policy, an Excess Catastrophe Liability Policy, resulting from a binder issued by an agent of General Accident, which provides coverage up to $1,000,000.00. The issue of whether this coverage applies to Paul Rodrigue and Evan Hall was raised at the trial. This issue was not decided by the Trial Judge because he did not hold Thibaut Leasing and its insurers liable for the acts of Paul Rodrigue.
The Combination Automobile Policy issued by General Accident to Thibaut Leasing provided that the company agrees:
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile." Insuring Agreements 1. Coverage A Bodily Injury Liability and Coverage B Property Damage Liability.
"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. The insurance with respect to any person or organization other than the named insured or such spouse does not apply:
"(1) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the *1007 operation thereof, but this provision does not apply to a resident of the same household as the named insured, to a partnership in which such resident or the named insured is a partner, or to any partner, agent or employee of such resident or partnership;
"(2) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."
Insuring Agreements III. Definition of Insured (a).
There was an agreement, evidenced by a letter (P-19), between Evan Hall and Thibaut Leasing that Thibaut Leasing would carry public liability insurance on the truck in question. Because the use of the truck by Paul Rodrigue was with the permission of Evan Hall, the lessee, and therefore with the permission of Thibaut Leasing, the lessor and the named insured, Paul Rodrigue is an "insured" under the terms of the policy issued by General Accident. Ritter v. Thornton, La.App., 309 So.2d 750 (4th Cir., 1975).
The Excess Liability Policy issued by Interstate Fire provides in part that:
"The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy." Part 1Insuring Agreements 1. Excess Liability Indemnity.
The General Accident Policy is the underlying policy in this instance. Because Paul Rodrigue is an "insured" under the underlying policy he is an "insured" under this excess liability policy.
It is the contention of Thibaut Leasing that the Excess Catastrophe Liability Policy provided by General Accident does not provide coverage in this case because of a judgment, dated October 3, 1974, containing a compromise agreement between Thibaut Leasing and General Accident as to the coverage afforded by this policy. This compromise agreement specifically excludes coverage of Paul Rodrigue and Evan Hall.
R.S. 22:655 provides in part that:
"It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort feasor within the terms and limits of said policy."
Neither Paul Rodrigue, the insured, nor the Blanchards, the injured persons, were parties to this suit. Therefore, this judgment does not affect the rights of these parties as regards coverage under the policy.
Testimony in the record by Herbert A. Rodrigue, an agent for General Accident, and the existence of the compromise agreement between Thibaut Leasing and General Accident, establishes that General Accident was bound by the action of its agent and is liable for excess coverage. This decision does not affect any right General Accident may have for indemnification from other parties under the terms of the compromise agreement.
Because it is the opinion of this Court that insurance coverage in this case is provided by the five policies introduced, it is necessary to determine the order in which the policies apply. These policies all contain "pro-rata" and "excess coverage" clauses with regard to other insurance.[1]
*1008 An examination of the various "pro rata" and "excess coverage" clauses contained in these five policies indicates that primary coverage in this instance is provided by the Combination Automobile Policy issued by General Accident. The "pro rata" clause contained in this policy does not conflict with the "excess coverage" clauses contained in the other policies. Juan v. Harris, La., 279 So.2d 187 (1973).
Where "excess coverage" clauses exist in policies providing double or concurrent coverage they are mutually repugnant and will not be enforced. In these cases each insurer is held liable in proportion to the limit of its respective policy. Concurrent coverage to $100,000.00 is provided by the Excess Liability Policy issued by Interstate Fire and the General Liability Automobile Policy issued by Bituminous Casualty. These policies contain excess coverage clauses which conflict. Concurrent coverage above these two policies, to a limit of $1,000,000.00, is provided under the Excess Catastrophe Policy, General Accident, and the Comprehensive Catastrophe Liability Policy, Bituminous Casualty. These policies also contain "excess coverage" clauses which conflict.
Therefore, coverage is as follows:
1. $0 to $5,000.00Combination Automobile Policy, General Accident.
2. $5,000.01 to $200,000.00Excess Liability Policy, Interstate Fire (19/39) and General Liability Automobile Policy, Bituminous Casualty (20/39)
3. $200,000.01 to $2,200,000.00Excess Catastrophe Policy, General Accident (1/2) and Comprehensive Catastrophe Liability Policy, Bituminous Casualty (1/2).
*1009 The Trial Judge did not err when he dismissed the plaintiffs' suit as to Frank Hollins, Thibaut Farms, Inc., Thibaut Leasing Co., Thibaut Oil Company, James H. Thibaut, Thomas A. Thibaut, James A. Thibaut, William Henry Thibaut, Vivian Elizabeth Thibaut Scott, Charles Lloyd Thibaut, James D. Thibaut, Betty Thibaut Smith, and Dr. David D. Thibaut. The Trial Judge's conclusion that the above parties were neither negligent nor liable for the negligence of Paul Rodrigue was correct. However, the Trial Judge did err in dismissing plaintiffs' suit as to General Accident Fire and Life Assurance Corporation, Ltd. and as to Interstate Fire and Casualty Company, insurers of Paul Rodrigue.
The plaintiffs contend that the Trial Judge erred in not awarding damages for the conscious pain and suffering of the decedent, the survivors grief, mental anguish, pain, shock and suffering, the loss of guidance and nurture of the minor children and loss of inheritable estate.
The Trial Judge concluded, based on the lack of skidmarks, that the accident occurred too quickly for the deceased to react, that, based on testimony of parties at the scene, the deceased never regained consciousness following the accident, and that, therefore, the deceased experienced no conscious pain and suffering for which an award could be made. Where there is no indication that the decedent consciously suffered any pre-death pain, an award cannot be made to the survivors for pain and suffering. Addison v. Travelers Insurance Company, La.App., 281 So.2d 805 (1st Cir. 1973).
The plaintiffs contend that the Trial Judge should have awarded damages for the survivors' grief, mental anguish, pain, shock and suffering and for the minor childrens' loss of guidance and support, in addition to his award for loss of love and affection. The plaintiffs also contend that the Trial Judge erred when he denied a recovery for loss of inheritable estate. These types of damages are not subject to specific pecuniary evaluation and it is not necessary that the Trial Judge make a specific award for each of these items. We feel that the Trial Judge's total award included these elements of damages.
The award of $3,088.00 to State Farm Mutual Automobile Insurance Company as reimbursement for its payment under the collision policy covering the Blanchard vehicle has not been contested and is affirmed. Primary coverage for property damage is provided under the Combination Automobile Policy issued by General Accident.
For the above and foregoing reasons, that portion of the Trial Court's judgment dismissing the plaintiffs' and State Farm's suit as to General Accident, Fire and Life Assurance Corporation, Ltd. and Interstate Fire and Casualty Company is reversed. The Trial Court's judgment is amended to make Paul Rodrigue, Evan Hall Sugar Cooperative, Inc., Bituminous Casualty Corporation, Genera] Accident Fire and Life Assurance Corporation, Ltd. and Interstate Fire and Casualty Company, solidarity liable. The judgment is affirmed as to all other matters. Cost to be paid by defendants, Paul Rodrigue, Evan Hall Sugar Cooperative, Inc., Bituminous Casualty Corporation, General Accident Fire and Life Assurance Corporation, Ltd., and Interstate Fire and Casualty Company.
REVERSED IN PART, AMENDED, AND AFFIRMED IN PART.

ON APPLICATION FOR REHEARING
The applications for rehearing have convinced this Court that a more precise assignment of cost and interest is necessary.
Code of Civil Procedure Article 2164 provides in part:
"The court . . . may tax the cost of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."
Cost are to be paid by the defendants in proportion to their liability for the entire amount of the judgment.
*1010 Interest which accrued from date of judicial demand until entry of judgment by this Court is apportioned among the defendants in the same manner as the liability for the judgment.
The Combination Automobile Policy issued by General Accident which provides the primary coverage in this case provides that the company shall:
"pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon."
Insuring Agreements II(b)(2).
After the date of rendition of judgment by this Court, interest on the entire amount of the judgment is to be paid by General Accident until such time as it pays, tenders or deposits in Court the limit of the company's liability under the primary policy. Adams v. Ross, La.App., 300 So.2d 192 (1st Cir. 1974); Ogaard v. Wiley, La.App., 325 So.2d 642 (3rd Cir. 1975); Doty v. Central Mutual Insurance Company, La.App., 186 So.2d 328 (3rd Cir. 1966). Interest on the entire amount of the judgment is not due from General Accident from the date of judgment by the Trial Court because there was no judgment by the Trial Court against General Accident.
DECREE AMENDED.
NOTES
[1] The Combination Automobile Policy issued by General Accident provides:

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, under coverages A and B the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance."
Conditions 20. Other Insurance.
The Excess Liability Policy issued by Interstate Fire provides:
"This condition does not apply with respect to the underlying insurance or excess insurance purchased specifically to be in excess of this policy.
"If, with respect to a loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects such loss; provided, that if the applicable limit of liability of this policy is greater than the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the applicable limit of liability afforded by this policy."
Conditions 5. Other Insurance.
The Excess Catastrophe Liability Policy, under the terms of which General Accident is bound, provides:
"It is agreed that if any occurrence covered hereunder is also covered in whole or in part under any other excess liability policy issued to the insured prior to the inception date hereof or under any prior term of this policy, the applicable per occurrence or aggregate limit of liability as stated in Item 3 of the Declarations shall be reduced by any amounts payable to the insured on account of such occurrence under such prior insurance."
Conditions 13. Prior Insurance and Non-Cumulation of Liability.
The General Liability Automobile Policy issued by Bituminous Casualty provides:
"With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured."
VI. Additional Condition, Excess Insurance Hired and Non-Owned Automobiles.
The Comprehensive Catastrophe Liability Policy issued by Bituminous Casualty provides:
"If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the retained limit and the limit of liability hereunder) the insurance hereunder shall be in excess of, and not contribute with, such other insurance. If the insured carries other insurance with the company covering a loss also covered by this policy (other than underlying insurance of which the insurance afforded by this policy is in excess) the insured must elect which policy shall apply and the company shall be liable under the policy so elected and shall not be liable under any other policy."
Conditions I. Other Insurance.