347 So.2d 1279 (1977)
Diane Allen JOHNSON, as natural tutrix of the Estate of her minor son, James V. Johnson, Jr.
v.
INTERNATIONAL INSURANCE COMPANY.
No. 11359.
Court of Appeal of Louisiana, First Circuit.
June 13, 1977.
Rehearing Denied July 11, 1977.
*1280 Paul H. Due, Baton Rouge, of counsel for plaintiff-appellant Diane Allen Johnson, et al.
James E. Moore, Baton Rouge, of counsel for defendant-appellee International Ins. Co., et al.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
COVINGTON, Judge.
This is a devolutive appeal by Diane Allen Johnson, as natural tutrix of the estate of her minor son, James V. Johnson, Jr., whom the family called "Jamie", seeking an increase in the award of damages made by the trial court and recovery of elements of damage denied by the trial court. The appeal also seeks reversal of the judgment dismissing the claim for the wrongful death of Dominick Johnson.
This action arises out of a motor vehicle accident which occurred on May 16, 1975, when Diane Allen Johnson was driving a car in which her husband, James V. Johnson, and their one year old son, Dominick Johnson, were guest passengers. Mrs. Johnson lost control of the automobile and collided with the rear of a truck parked on the shoulder of the roadway, as a result of which both her husband, James, and also her son, Dominick, were killed. Mrs. Johnson sustained severe personal injuries.
The suit instituted by Diane Allen Johnson was brought solely in her capacity as natural tutrix of the estate of the surviving child, James V. Johnson, Jr., asking for damages for the wrongful death of the child's father, damages for the wrongful death of his brother, and recovery of funeral expenses for both. Named defendant in the suit was International Insurance Company, the liability insurer of the vehicle being operated by Mrs. Johnson.[1] At trial, liability of the defendant was admitted; also, applicable insurance coverage was stipulated at $100,000.00 per person and $300,000.00 per accident. The matter remaining to be determined by the court was the value of the loss sustained by the minor.
The trial judge rendered judgment in favor of plaintiff, in her representative capacity, for and on behalf of James V. Johnson, Jr., awarding general damages to the minor for the wrongful death of his father in the principal sum of $17,500.00, and further awarding him $17,500.00 for loss of support and services flowing from the wrongful death of his father, or a total of $35,000.00. Judgment was also rendered dismissing the claim for the wrongful death of the minor's brother, Dominick Johnson, and denying recovery of funeral expenses. From this judgment, plaintiff-appellant has perfected *1281 this appeal. Defendant has not appealed or answered the appeal.
The plaintiff-appellant first contends that the trial judge erred in awarding an inadequate amount as general damages. We agree. The trial judge manifestly abused his much discretion in making this award.
A review of the record in this case convinces us that the award for general damages should be increased. The trial judge's award for this item of damages does not measure up to the minimum allowable award in accordance with the standard provided by our Supreme Court in the case of Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
We, of course, take cognizance of and apply the rule, pursuant to instruction from our Supreme Court, that awards for damages lie within the "much discretion" of the trier of fact and are not to be disturbed on appeal unless there is a "manifest abuse" of the discretion. Coco v. Winston Industries, Inc., supra; Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974).
We are also mindful of the principle that awards in similar cases of this nature do not provide a scale of uniform awards in other cases involving comparable injuries. Such awards serve only as aids in determining whether a particular award is so greatly disproportionate to awards for similar injuries that a manifest abuse of discretion is evident. Temple v. Liberty Mutual Insurance Co., 336 So.2d 299 (La.App. 1 Cir. 1976), writ ref. La., 339 So.2d 23.
In considering the award for general damages, we find that the evidence shows James V. Johnson, Jr., had just made six years of age five days before the death of his father. The testimony demonstrates that Mr. Johnson was a living and attentive father, and the loss sustained by this young son of his father was a grievous one. In view of his work and the ages of his children, this father spent a substantial amount of time with them, taking them out shopping, to parks and the zoo and to watch sailboats race at the city park, taking the entire family to baseball games, playing football and other games with Jamie, having family outings and holiday trips, regularly accompanying them to church and Sunday School at the church were Mr. Johnson served on the board of deacons, and assisting his older son with his school homework. He had actively participated in festivities in celebration of Jamie's sixth birthday just five days before the tragic wreck and his resultant death.
Thus, we have a close-knit and loving family which enjoyed doing things together. The evidence shows that the deceased was a fine man, a good, hard-working husband, and a conscientious and loving father. Of course, the law realizes that such a loss is irreparable and that such a father is irreplaceable to a young son. Thus, it tries to provide merely a measure of recompense by means of a monetary award. It is not easy for a trial judge to determine the amount of such damages, or for the reviewing court to resolve whether the trier of fact has abused his much discretion in fixing damages of that character. We do know that past decisions do not serve as a scale of uniformity. We also are aware that at some point an award must be said to be too low, and we, as an intermediate appellate court, must raise the award to the lowest acceptable discretionary level. Further, we are conscious of the fact that there are general guidelines which a reviewing court must follow. Moreover, we know that each case for decision must ultimately turn on its own unique facts. In this respect, certain human values become important. For example, a devoted parent is worth more than an indifferent parent; the death of a dutiful father during a son's formative years is a greater loss than the death of a father to an adult son. Admittedly, this creates the necessity for a value judgment, but it is primarily the value judgment of the trier of fact which must be exercised. As a reviewing court, we do not substitute our value judgment for that of the trial judge; we merely review his award to determine if it falls within the acceptable range of awards indicated for a particular injury or death.
*1282 In applying the "much discretion" rule within the scope of our reviewing authority to the facts in the instant case, we find that the trial judge has manifestly abused his much discretion in fixing the amount of the award. After checking the awards in other cases of some similarity, used only as an aid in ascertaining whether or not there has been such abuse, thoroughly reviewing the evidence in the record, and studying the helpful briefs of counsel for all parties, and taking into account the particular facts and circumstances in the instant case, we can only conclude that the trial judge's award is inadequate and should be increased to the principal sum of $30,000.00.
The plaintiff-appellant next contends that the trial judge erred in awarding an inadequate amount for loss of support to the minor. We agree.
In the recent case of Blanchard v. Rodrigue, 340 So.2d 1001 (La.App. 1 Cir. 1976), this Court said:
"The settled jurisprudence of this state is that damages for loss of support are speculative in nature and cannot be calculated with mathematical certainty. The most a Court can do in such cases is to exercise sound judicial discretion and award an amount which, considering all the circumstances, seems just to both parties and is not unduly oppressive to either. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968); McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183 (1961).
"Factors which should be weighed in determining the amount due for loss of support include the decedent's present earnings, his age and life expectancy, his work-life expectancy, the possibility of a decrease or increase in his earnings, the decedent's job security, the nature of decedent's work, his health, his relationship with his family, his personal expenses and his past work record. Other factors are the surviving spouse's age and health, the minor children's age, and the effects of inflation and the need to discount future earnings to a present day amount. In short, all factors relevant to a determination of the amount of the loss of support due to the premature demise of the decedent should be considered."
The record in this case, when considered in light of the trial judge's award for loss of support and his explained reasons therefor, unequivocally shows that he failed to consider those relevant factors, as set out in the Blanchard case, necessary to determine the amount of the loss of support. The trial judge fixed that sum at $17,500.00, which is the same amount that he assessed for general damages. His "Written Reasons for Judgment" disclose that he placed too great an emphasis on the cost of raising a child from "crib to college", based upon the Bureau of Labor's national estimation for rearing a child. We do not accept this study alone as forming a reasonable basis for calculating the loss of support to the minor. Such an analysis can serve merely as an aid in fixing loss of support; it cannot supply a mathematical formula with which to compute loss of support with exactitude.
The only expert witness to testify at trial was Dr. John W. Chisholm, who was called on behalf of the plaintiff. That testimony is summarized in his September 8, 1976, report. It provides a figure representing the present value of the lost earnings to age 18 years for his son, James V. Johnson, Jr., as $113,387.99, which we find to be an acceptable one. Dr. Chisholm arrived at this amount by projecting the earnings of the late James V. Johnson, with Mazda of Baton Rouge for 1975, at $8,858.21 which was computed by using and projecting Mr. Johnson's earnings for the first five months of 1975, which amounted to $3,690.92. Dr. Chisholm indicated that this figure was reasonable, considering the fact that Mr. Johnson, when he first started work with Mazda about the middle of June, 1974,[2] earned $4,164.72 for about six months of work in the preceding year; that figure, on a twelve months earning period in 1974, would come to $8,329.44, compared with $8,858.21 for the projected earnings in 1975.
*1283 Dr. Chisholm pointed out that it was realistic to assume that Mr. Johnson's earnings would not remain level at the 1975 figures, especially after considering that he was a 28 year old worker. Therefore, Dr. Chisholm used a 3% annual productivity wage increase factor. He also used a 4% price level increase per year, which he explained was less than the actual rate of inflation which has been experienced during the preceding ten years, and which figure is more conservative than the government and economists expect to experience within the next twelve years.
Using the projected earnings with the 3% annual productivity wage increase, plus the 4% price level increase per year, resulted in gross earnings of $162,219.92 to age 18 for this child, which figure was then discounted at the rate of 6%, resulting in the figure of $106,136.90.
Dr. Chisholm further indicated that the appropriate amount of earnings which should be attributed to the support of the minor should be one-third of $106,136.90, or the sum of $35,378.96.
Concerning the jurisprudential approval for taking into account inflation, or price level increase, or the decreasing purchasing power of the dollar, the recent case of Loetzerich v. Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans, 325 So.2d 626 (La.App. 4 Cir. 1976), stated:
"Defendant's final argument concerns the trial court's admission of evidence pertaining to inflation in dealing with the future loss of earnings award. Defendant contends inflation is too speculative to be considered in such an award and cites the case of Johnson v. Penrod Drilling Company, 510 F.2d 234 (5th Cir. 1975) as authority. While we admit that Johnson does stand for this proposition, the courts of Louisiana have expressed a contrary viewpoint. Our courts have consistently recognized that the decreasing purchasing power of the dollar due to constant rises in living expenses is a proper element of consideration in damage awards. Edwards v. Sims, 294 So.2d 611 (La.App. 4 Cir. 1974); Goutierrez v. Travelers Insurance Company, 107 So.2d 847 (La.App. 1 Cir. 1959). We see no compelling reason at this time to deviate from this established position."
In Morgan v. Liberty Mutual Insurance Company, 323 So.2d 855 (La.App. 4 Cir. 1975), the Court had to decide whether to accept an actuary's projection of inflation and discount or investment yield factors in computing loss of future wages. The Court approved the use of an inflation factor at 3.8% per year, which is a little less favorable than the 4% per year inflation factor used by Dr. Chisholm herein, but also approved the use of a 4.8% investment yield or discount factor, which is more generous to the plaintiff than the 6% investment yield or discount factor used by Dr. Chisholm. The Court said:
"Considering these factors we use a. $19,000 per annum base. We accept an actuarial projection of inflation at 3.8 per cent per year and use a 4.8 per cent investment yield in making our computations. For each $1,000 present value dollars to be paid for 9.2 years (with inflation at 3.8 percent), $8,847.49 is needed. This contemplates paying the first $1,000 in advance and leaving a balance of $7,847.49 to invest at 4.8 percent. A lump sum of $168,102.38 is awarded to produce this yield.
"The Supreme Court has admonished against the use of precise mathematical calculations based upon life expectancy to set the loss of future wages. However, our award makes allowance for the adjustments we deem necessary to adequately compensate for the loss of future wages.
"Stated another way, the award of damages for loss of future wages projected over the period of disability or life expectancy is discounted or adjusted by a reasonable rate of return which could be realized from its conservative investment based upon prevailing market conditions at the time of its award. This adjustment is necessary because the prepayment of this particular anticipated damage for 9.2 years is made immediately *1284 upon the finality of judgment, whereas in fact the right to such wages would normally accrue or be payable in successive years in the future over a like period of time." (Emphasis added, footnote omitted.)
In Triche v. Commercial Union Insurance Co., 329 So.2d 784 (La.App. 1 Cir. 1976), the Court adopted a discount at the rate of 6% annually, applying the provisions of LSA-R.S. 47:2405.
In Reeves v. Louisiana & Arkansas Railway Company, 304 So.2d 370 (La.App. 1 Cir. 1974), writ den., La., 305 So.2d 123, the Court accepted the use of gross earnings rather than net earnings, as Dr. Chisholm used in his computations. See also Menard v. Travelers Insurance Company, 240 So.2d 390 (La.App. 3 Cir. 1970).
Considering all aspects of the instant case, we find that Mrs. Johnson, on behalf of her young son, is entitled to the sum of $35,500.00 for the loss of support. The award of only $17,500.00 constitutes a manifest abuse of discretion by the trial judge. LSA-C.C. art. 1934(3).
The plaintiff-appellant's third contention is that the trial judge erred in denying the minor child recovery for damages for the wrongful death of his brother.
Under LSA-C.C. art. 2315, the persons who may bring a wrongful death action are designated. The article sets out three separate classes of beneficiaries, and the wording of the article indicates that each class successively excludes the following class. If the spouse and child, or either, survive the decedent, no member of class two or class three has an action; if neither spouse nor child survive, but the parents, or either of them do survive, then no member of class three has an action. In brief, the higher priority class of beneficiaries excludes all others. It is plain that a surviving brother has a right of action only if the decedent "left no spouse, child, or parent surviving." In the instant case Dominick Johnson, the decedent, left his mother surviving; therefore, James V. Johnson, Jr., the brother, has no right of action to sue for damages for the wrongful death of Dominick.
Accordingly, we affirm the trial judge's denial of recovery for the death of Dominick Johnson.
The plaintiff-appellant's fourth contention is that the trial judge erred in denying recovery of funeral expenses. We affirm this action. In Andrus v. White, 236 La. 28, 106 So.2d 705 (1958), the Court refused recovery to the minor son for funeral expenses, remarking:
"In our opinion the fact that one is a ranking beneficiary under Article 2315 is not sufficient of itself to entitle him in all cases to recover the amount of hospital and funeral bills. Recovery should be permitted only where there is evidence that the ranking beneficiary has suffered loss or has been damaged in the amount of these bills. It is the established rule in this state that damages must be proved in order to be recoverable."
The Court continued:
"In the instant case there is no legal liability on the minor to pay these bills, nor has he paid them or incurred any liability for their payment."
Lastly, the plaintiff-appellant urges that the trial judge erred in fixing the expert witness fee of Dr. Chisholm at $250.00, and that the fee should be increased. It is well settled that the fixing of the fee of an expert witness is within the sound discretion of the trial court and should not be disturbed unless manifestly erroneous. See Williams v. Harvey, 328 So.2d 901 (La.App. 4 Cir. 1976); Borenstein v. Joseph Fein Caterers, 255 So.2d 800 (La.App. 4 Cir. 1971). In the present case, the record reflects only that Dr. Chisholm charged $500.00 as his fee for testifying. The amount charged by the expert is not the proper criterion to determine the fee; State, Department of Highways v. Gordy, 322 So.2d 418 (La.App. 3 Cir. 1975).
We find that there was no abuse of the trial court's discretion in fixing the fee of Dr. Chisholm at $250.00.
*1285 Therefore, the judgment of the trial court is amended to increase the amount of general damages awarded to the plaintiff, in her capacity as natural tutrix of her minor son, James V. Johnson, Jr., from $17,500.00 to $30,000.00; the judgment is further amended to increase the award for loss of support to the minor son from $17,500.00 to $35,500.00.
In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are to be borne by the appellees.
AMENDED AND AFFIRMED.
NOTES
[1] Suit was also initially filed against another insurer, but that defendant was dismissed in response to plaintiff's motion.
[2] The exact date of employment was June 19, 1974.