312 So.2d 103 (1975)
FIRE AND CASUALTY INSURANCE COMPANY OF CONNECTICUT
v.
Wyman GARRICK et al.
No. 10184.
Court of Appeal of Louisiana, First Circuit.
March 10, 1975.
Rehearing Denied May 20, 1975.
Writ Refused June 23, 1975.
Edward A. Griffis and Charles M. Hughes, Bogalusa, for appellant.
Michael J. Paduda, Jr., Bogalusa, for appellees.
Before LANDRY, BLANCHE and YELVERTON, JJ.
LANDRY, Judge.
Plaintiff, Fire and Casualty Insurance Company of Connecticut (Company), appeals dismissal of its subrogation claim for a fire loss that resulted to Company's insured, Mrs. D. L. Morris, whose smokehouse burned during a pork sausage smoking operation conducted therein by Mrs. Morris' son-in-law, Wyman Garrick. The lower court rejected Company's demands against Garrick and his liability insurer, United States Fidelity and Guaranty Company (USF&G). We affirm.
On appeal, Company asserts that Garrick was negligent in leaving the smokehouse unattended after commencing the smoking operation. Alternatively, Company contends the doctrine of res ipsa loquitur is *104 applicable herein, and pursuant thereto Garrick should be held liable for failure to rebut the presumption of negligence created thereby.
The relevant facts are undisputed. Mrs. Morris' home is situated on premises identified as 1443 Avenue L., Bogalusa, Louisiana. Besides the residence, her property contained a barn, other outbuildings and a 12 by 20 foot structure built expressly for use as a smokehouse. The floor of the smokehouse consisted of a concrete slab approximately four inches thick. The walls of the smokehouse were approximately 11 feet high and consisted of 2" × "4 studs enclosed with 1" × "6 tongue and groove pine boards. The building's tin roof was supported by 2" × 4" rafters. A door in the 12' south wall provided the only means of ingress and egress to the structure. The remaining walls each had a single window in the center. The interior of the building was unsealed and had no ceiling. The roof was constructed to allow an approximate two-inch opening beneath the eaves around the entire perimeter of the structure to permit smoke to escape during the smoking process.
The fire in question occurred on the morning of Sunday, February 25, 1973. Prior to that date, the smokehouse had been in use for approximately 15 years, and had been initially used as such by Garrick's now deceased father-in-law. Garrick, who had approximately 30 years experience in the art of smoking sausage (which he learned from his father), had used the Morris smokehouse for approximately 10 years on an average of twice annually.
In the smoking process, the sausage was hung from an apparatus made of two 4" beams running the length of the smokehouse and suspended parallel to each other by means of stainless steel wires attached to the rafters. Across these beams, Garrick placed 2" sassafras poles upon which the sausage lengths were hung. The smoking apparatus consisted of a 55 gallon metal drum which Garrick halved longitudinally. Using dry pecan wood, Garrick made a fire in one-half of the drum outside the smokehouse. When the wood was completely reduced to coals, Garrick brought the half drum into the smokehouse and placed it on a bed of fire bricks laid out on top of the concrete floor in the approximate center of the building. He then chocked or braced this container with additional fire bricks so that it could not move. Garrick then filled this half drum with green hickory logs from 12" to 15" in diameter and measuring approximately two and one-half feet in length. He then placed the other half of the drum atop the portion containing the coals and hickory logs to form a cover. He then placed additional fire bricks on the cover half of the drum to keep it securely in position. Then, in a manner not made completely clear, he placed the end of another drum atop the covered drum, and secured it with fire bricks for the purpose of catching fat drippings and preventing their contact with the heated drum. Garrick explained that as constructed, the apparatus allowed the emission of smoke only through the very narrow crack between the drum halves. He also noted that, in smoking meat, fire and flame are to be scrupulously avoided, otherwise the sausage or meat will be burned and ruined. The process, according to Garrick, takes from three to five days depending upon weather conditions.
Garrick made and stuffed his own sausage, carefully avoiding the use of fat as part of the ingredients. In the process, he was assisted by Mrs. Morris. At about 1:00 P.M. on the afternoon before the fire, Garrick hung the sausage in the smokehouse, assisted by Mrs. Morris. The sausage was allowed to "drip" until about 5:00 P.M. to rid it of water content.
At about 5:00 P.M., Garrick made the fire in the manner above indicated and commenced the smoking process. He then secured the door of the smokehouse with a new lock and departed. At about 8:00 P.M., Garrick checked the smokehouse by opening the door and observing that all was in order. Garrick again checked the *105 building at about 6:30 A.M. Sunday morning. At this time he again opened the door and found all in order. Thereafter Garrick went home, dressed for Sunday church services and, on his way to church, passed by the smokehouse at about 8:30 A.M. On this occasion, Garrick checked the building from his vehicle. He noted that the proper amount of smoke appeared to be escaping from beneath the eaves and concluded that all was in order. Garrick drove to church, attended services, and then had lunch at a cafe. At about 12:30 P.M., he went to check the smokehouse and found it practically destroyed by fire. Garrick vainly attempted to save the remainder of the building by using an available garden hose. The fire ultimately consumed the entire building and its contents. Following the fire, Garrick found the door lock near the fire drum in the center of the building. He also noted that the lock appeared to have been battered. The lock was not offered in evidence. Garrick testified that he gave the lock to Mrs. Morris following the fire. Mrs. Morris verified Garrick's version of the condition of the lock after the fire. She also stated that she could not recall what happened to the lock.
A procedural question is presented in that defendants objected to the introduction of Garrick's deposition taken by Company prior to trial. Defendants urge that the trial court incorrectly admitted the deposition in evidence considering Garrick was present at the trial and testified in person. Defendants' position is without merit. Garrick is a party defendant herein and his deposition was introduced by the plaintiff company. LSA-C.C.P. art. 1428(2) provides that the deposition of a party to litigation may be introduced by an adverse party in evidence for any purpose whatsoever. See also, Menard v. Travelers Insurance Company, La.App., 240 So.2d 390.
We reject Company's contention that Garrick was negligent in leaving the smokehouse unattended during the smoking process. As previously shown, the process requires at least three days. It also appears that once the fire is properly set, it lasts during the entire operation and never requires attention such as replenishing. Garrick explained that watching the fire would be a useless precaution because the smoke was produced in a manner which allowed nothing but smoke to escape from the drum.
It is elementary law that negligence is determined in the light of the facts and circumstances of each particular case, and that negligence is the failure to exercise that degree of care ordinarily expected and required of a reasonably prudent person under the same or similar circumstances. It is noteworthy that we are here dealing with a smoking operation conducted in a building expressly constructed for that purpose. The manner in which Garrick made and controlled the combustion involved appears reasonably calculated to contain the fire within the drum and prevent the escape of smoke only. To smoke the meat, it was essential that the smoke escape and fill the smokehouse. While this may possibly have permitted the escape of sparks, we do not find this eventuality so probable or likely that constant attendance was required during the entire process. We find Garrick's periodic checks constituted an exercise of due care insofar as attendance was concerned.
Relying primarily upon Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621, Company contends the trial court erred in declining to hold the principle of res ipsa loquitur applicable in this instance. In Boudreaux, above, the court, in considering application of the doctrine of res ipsa loquitur, stated the following:
"We noted in Larkin v. State Farm Mutual Automobile Insurance Co., 233 La. 544, 97 So.2d 389, 391 (1957): `* * * the maxim (res ipsa loquitur) means only that the facts of the occurrence warrant the inference of negligence, *106 not that they compel such an inference.... The application of the rule does not, therefore, dispense with the necessity that the plaintiff prove negligence, but is simply a step in the process of such proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence.... When all the evidence is in, the question is still whether the preponderance is with the plaintiff.'
"Nevertheless, when all the evidence is in and the question is whether, by reason of the res ipsa loquitur rule, the plaintiff has preponderately proved that the defendant is responsible in tort for his injury, we have in our most recent decision on the issue noted that the real test of applying res ipsa loquitur to be as follows: `Do the facts of the controversy suggest negligence of the defendant, rather than some other factors, as the most plausible explanation of the accident?' Pilie v. National Food Store, 245 La. 276, 158 So.2d 162, 165 (1963). * * * On the other hand, application of the principle is defeated if `an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence.' (Citations omitted.)"
In a Comment appearing at 25 La. L. Review, 748, 763, 764, we note the following observations concerning application of the principle of res ipsa loquitur:
"The doctrine of res ipsa loquitur is basically an application of principles of circumstantial evidence. The traditional elements that must be shown by a plaintiff who seeks to invoke the doctrine are merely factors by which the defendant may be so closely connected with the fact of plaintiff's injury as to make the inference that his negligence caused the injury more plausible than any other.
"To be able to conclude that a particular occurrence would not have happened in the absence of negligence presupposes a fund of common knowledge of the probable causes from which a basic inference of negligent causation may be drawn. As the activity becomes more specialized, the mere occurrence of an injury is no basis for any inference whatsoever, and, consequently, additional technical information concerning probable causes involved in such specialized activity must be brought before the court."
As contended by Company, fire is a dangerous instrumentality which requires a high degree of care on the part of anyone utilizing or working therewith. Tassin v. Louisiana Power & Light Company, 250 La. 1016, 201 So.2d 275. Nevertheless, we conclude that a fire which destroys a building especially constructed for use as a smokehouse, in which meat is prepared for human consumption by a curing process involving the use of smoke, does not necessarily give rise to a presumption of negligence on the part of the person who made the fire to produce the smoke.
Considering the instant case involves a specialized use of fire, in a building constructed specifically for such purpose, and considering further Garrick's explanation, which clearly demonstrates a prudent use of fire under the circumstances, we find that the evidence, as a whole, does not suggest that Garrick's negligence, rather than other factors, is the most plausible cause of the fire. We therefore concur in the trial court's decision that the doctrine of res ipsa loquitur is not applicable in this instance.
Plaintiff, having failed to discharge the burden of establishing negligence on the part of defendant, Garrick, the judgment of the trial court dismissing its suit is affirmed at Plaintiff Company's costs.
Affirmed.