367 So.2d 1280 (1979)
Karen C. MAUTHE, Plaintiff-Appellant,
v.
Susan L. GIBSON et al. and State of Louisiana Through Department of Highways, Defendants-Appellees.
No. 6837.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1979.
Writ Refused March 23, 1979.
*1281 Carey D. Bearden, Lafayette, and Leonard A. Radlauer, New Orleans, for plaintiff-appellant.
Woodrow Wyatt, Baton Rouge, for defendants-appellees.
Before DOMENGEAUX, SWIFT and STOKER, JJ.
STOKER, Judge.
This is a suit for personal injuries arising from an automobile collision. The issue presented by this case is whether the Department of Highways was negligent in either failing to institute protective measures for left turning vehicles or in failing to properly inspect the intersection at which the collision occurred.
Plaintiff, Karen Mauthe, was injured in Lafayette at the intersection of Johnston (a major thoroughfare) and Jefferson Streets. The automobile in which she was riding as a guest passenger was struck as its driver attempted to negotiate a left turn off of Johnston onto Jefferson. As the car crossed the middle of the on-coming traffic lane it was struck broadside, the impact throwing Ms. Mauthe from the car and severely injuring her. It is plaintiff's contention that the traffic lighting system at this intersection was so designed as to cause a trap for the unsuspecting and that the Department of Highways should be held liable for this faulty system. More particularly, the plaintiff alleged that the defendant breached its duty in failing to provide protective measures for left turning vehicles proceeding from Johnston to Jefferson, or for not prohibiting all left turns at that intersection. After trial on the merits, the court held that the failure of the Highway Department to install a left turn phase for southbound traffic did not amount to negligence. The District Court found that the sole cause of the accident was the negligence of Susan L. Gibson, the driver of the car in which plaintiff was riding.[1]
ISSUE
As stated above, the issue presented by this case is whether the Department of Highways was negligent in either failing to institute protective measures for left turning vehicles or in failing to properly inspect the intersection.
FACTS
The trial record established that the accident in which the plaintiff was injured occurred on June 16, 1975. At the time of the accident, the State had in its possession a traffic study of this intersection which had been conducted by it in 1973 over a one year period. The results of this study showed that an average of 109 northbound vehicles per hour turned left from Johnston Street to Jefferson Street, while only 19.5 southbound vehicles per hour made a left turn from Johnston to Jefferson. The study further *1282 showed that during 1973, there were ten accidents involving northbound left turning vehicles compared to seven involving southbound left turning vehicles. As a result of this study, the State decided that the proper action to take was to install a left phase turn signal to the already existing signal for traffic northbound on Johnston Street. The State did not change anything with respect to southbound traffic.[2]
PLAINTIFF-APPELLANT'S ARGUMENT
Plaintiff's principal argument is that the State was negligent in failing to prohibit left turns for traffic southbound on Johnston Street, since it had evidence that the accident ratio was greater for southbound traffic than for northbound traffic. Plaintiff asserts that the trial judge misconstrued the thrust of her case because the written reasons only addressed the failure to install a left turn phase and not the prohibition of left turns. What the plaintiff urges the court to do is to engage in hindsight and hold that, on the basis of the information disclosed in the study, the State should have banned left turns for southbound traffic. Plaintiff urges that it was negligence for the State not to do something and further urges that prohibiting left turns for southbound traffic was the best course. The plaintiff would then have us find the State liable because it did not select the best option available to it at the time of the accident.
STATE NOT REQUIRED TO POST NO LEFT TURN SIGNS
It is elementary that negligence is determined from the facts and circumstances that existed at the time the accident occurred and if a person acted as a reasonable and ordinarily prudent person under these circumstances, he cannot be found to have been negligent. Pence v. Ketchum, 326 So.2d 831 (La.1976); Fire and Casualty Ins. Co. of Conn. v. Garrick, 312 So.2d 103 (La.App. 1st Cir. 1975), application denied, 313 So.2d 845 (La.1975). It is also settled that while the State has the responsibility for the proper maintenance for all roads in the State, it is not an insurer of the public's safety on these roads. Vervik v. State Depart. of Highways, 302 So.2d 895 (La.1974); Pelloat v. State Depart. of Highways, 198 So.2d 674 (La.App. 1st Cir. 1967), writ refused 251 La. 23, 202 So.2d 648 (1967). The court believes that to find the State negligent under the particular circumstances of this case would have the effect of making the State the insurer of the safety of the public. Neither by statute nor case law is an affirmative duty imposed upon the State to install left turn signals or prohibit left turns. From hindsight, it might be possible to say that the State could have taken some action to have prevented accidents such as the one in this case. However, the testimony of Lawrence C. Harry, supervisor for the Department of Highways for this particular district, indicated that he took into account all relevant factors and made a reasonable determination under the circumstances. Mr. Harry testified that he considered the possibility of prohibiting left turns at the intersection, but ruled it out as a feasible solution to the problem.
That the State was not negligent in failing to prohibit left turns is further supported by the testimony of Mr. Harry and the defendant's expert, Tony Ray Trammel, to the effect that the alternatives to turning left at this intersection were as dangerous as the existing situation. A left turn is widely recognized as one of the most dangerous maneuvers that is made on the State's highways. Here, it was shown that if left turns were prohibited at the intersection of Johnston and Jefferson Streets, then three left turns would be necessary just to get back to where the driver would have been if allowed to turn left at the intersection. Both Trammel and Harry testified that it is very possible that this would be just as dangerous and possibly even more dangerous than allowing the left turns at *1283 the intersection in question. This court is unable to say that the State's failure to remedy the situation at the intersection, even though it knew of the high accident ratio, amounted to unreasonable action on its part.
Plaintiff's entire argument discussed above is based on a predicate not established. That predicate, as urged by plaintiff, is that known data concerning left turns at the intersection dictated that the State do something and that action was to prohibit left turns for southbound traffic. We do not find that the predicate was established, nor is it self-evident as plaintiff seems to think. The intersection was not unusual in any way. That it presented a hazard is clear, but it is a normal hazard. The hazard presented was in no respects different from similar intersections which are innumerable. The left turning motorist has the duty of not turning left if visibility is impaired as was the case here. While it is true that, had the State prohibited left turns at the intersection, Susan L. Gibson probably would have obeyed the regulation and the accident would not have happened. However, the State has no duty to impose regulations to protect guest passengers from negligent accidents of their hosts.
Moreover, to adopt plaintiff's theory would require that the State ban left turns as a matter of course on all four lane streets in urban areas. We are not persuaded that this should be done. If the testimony of the experts in this case establishes anything, it was that there is no agreement in this area of traffic regulation. Therefore, our conclusion is that in a given situation involving intersections of four lane streets with other streets, prohibiting left turns may be an appropriate option, but to do so will hardly ever be dictated.
Plaintiff, however, cites to the court the case of Christ v. State, Dept. of Highways, 161 So.2d 322 (La.App. 3rd Cir. 1964), writ ref. 246 La. 82, 163 So.2d 358 (1964) for the proposition that the Department of Highways has a duty to erect sufficient warnings to alert the ordinary motorist, taking into account the probable traffic, the character of the road, and the use reasonably to be anticipated. Plaintiff also cites the case of Von Cannon v. State, Dept. of Highways, 306 So.2d 437 (La.App. 3rd Cir. 1975), writ ref. 309 So.2d 681 (1975), for the principle that such safeguards should be commensurate with the danger. By their express terms, however, the duty which these cases impose on the Department of Highways is limited to providing safeguards sufficient to protect the "ordinary, reasonable motorist". In the present case, adequate safeguards to protect the ordinary, reasonable motorist were provided. The intersection was controlled by a traffic signal which included a left turn phase for traffic northbound on Johnston Street. This would have been sufficient safeguards to protect Susan Gibson, if she had been operating her vehicle as an ordinary, reasonable motorist.
However, plaintiff argues that the court's reasoning in the case of McFatter v. Sizemore, 361 So.2d 457 (La.App. 4th Cir. 1978) supports the assertion that Miss Gibson did in fact operate her vehicle as an ordinary, reasonable motorist. In McFatter, the plaintiff came to a stop signal at an intersection and did in fact stop. As a result of another vehicle being illegally parked, Mrs. McFatter could not see traffic coming into the intersection from a particular direction. Mrs. McFatter was also not in a position to extricate herself from this situation because of cars being lined up behind her. The court held in this instance that Mrs. McFatter was not negligent in moving slowly forward into the intersection and colliding with another vehicle.
In the present case, unlike in McFatter, the situation with which Miss Gibson was presented was all of her own making. Miss Gibson pulled into the opposite lanes of traffic without first making certain that she could do so safely. Also unlike the situation in McFatter, Miss Gibson had choices other than the one for which she opted. She could have waited for all of the traffic which was blocking her vision to clear or she could have chosen to proceed to the next intersection before turning. Instead, Miss Gibson chose to slowly move into the opposite lanes of traffic and thus caused the resulting collision. Hence, the McFatter case does not support a conclusion *1284 that Miss Gibson acted reasonably in the present case. See State Farm Mutual Ins. Co. v. South Central Bell, 343 So.2d 758 (La.App. 3rd Cir. 1977).
STATE'S DUTY TO INSPECT
In addition to the theory of negligence based upon the State's alleged failure to recognize the need for prohibiting left turns at the intersection, the plaintiff asserts that she is entitled to recover for the State's failure to properly inspect the intersection. Plaintiff argues that if the State had performed its duty to inspect, then it would have discovered a visual obstruction and been able to have cured it. The visual obstruction which plaintiff contends existed was caused by a backup of northbound cars waiting to turn left from Johnston Street to Jefferson Street. This backup of cars would block southbound motorists' view of the northbound right lane at the intersection. Hence, when southbound motorists were waiting to turn left into Jefferson Street, they could not see traffic in the right lane coming from the opposite direction. Plaintiff contends that the failure to inspect the intersection and discover the obstruction is negligence on the part of the State.
The State's obligation to the public to care for its highways includes the duty "to provide and enforce an efficient and continuous system of inspection of all state highways . . ." Jones v. Louisiana Dept. of Highways, 338 So.2d 338 (La. App. 3rd Cir. 1976). The Department of Highways also has the duty to discover and correct visual obstructions at intersections. Stewart v. Lewis, 292 So.2d 303 (La.App. 1st Cir. 1974). However, in the present case, the alleged obstruction was of a transitory nature, i. e., when northbound vehicles were not waiting to turn left onto Jefferson, then southbound motorists' vision was not blocked. It is obvious that the obstruction of which plaintiff complains in this case exists at any four lane undivided highways. Our previous comments with respect to such conditions in general apply equally to plaintiff's argument concerning the failure to inspect. Even plaintiff's own expert testified that such a visual obstruction would exist at any such intersection. Thus, in order to abolish accidents caused by such obstructions, the State would have to either install protective left turn signals or ban left turns at all intersections. This is a patently unworkable solution and the failure to do so at this intersection is certainly not grounds for finding the State negligent.
This court concludes as did the court below, that the sole cause of this accident was the negligence of Susan L. Gibson, the driver of the vehicle executing the left turn. We refuse to place upon the State the untenable burden of attempting to prevent all accidents such as the one which occurred in this case.
For the foregoing reasons, the judgment of the District Court is affirmed. All costs are assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[1] Plaintiff settled her claims against all defendants other than the State prior to trial. However, Susan L. Gibson (now Mrs. Susan Gibson Bernard) remains in the case as a third-party defendant of the Department of Highways.
[2] The factors influencing a decision to install such devices include efficiency of traffic movement, convenience and safety. Efficiency and convenience appear to have been the factors which prevailed here and led the State to provide a left turn signal for northbound traffic on Jackson but not to do so for southbound traffic.