FORET, Judge.
This is a tort action. William Palmer (Plaintiff) seeks to recover for personal injuries he sustained in a vehicular collision. The defendants are Wilfred Sepulvado, the driver of the other vehicle, and his liability insurer, Insured Lloyds. The Louisiana Department of Transportation and Development; Albert Cohen, Allie Cohen, and Claude Mason, individually and d/b/a Buckeye Landing and their liability insurer, Houston General Insurance Company (Houston); L. J. Ernest and Company and its employee, Richard Bruce, are also named defendants.
The trial court rendered judgment on December 14, 1979, in favor of plaintiff and against Wilfred Sepulvado in solido with his liability insurer, Insured Lloyds, in the sum *429 of $5,000.00, and against Wilfred Sepulvado, individually, in the sum of $45,000.00. The trial court also rendered judgment against plaintiff, dismissing his demands against the remaining co-defendants with prejudice.
William Palmer filed a motion for á new trial and/or rehearing on March 10, 1980, which was denied. Insured Lloyds appealed suspensively. Wilfred Sepulvado and William Palmer appealed devolutively.
There are two major issues presented by the parties on appeal:
(1) Whether Wilfred Sepulvado was guilty of negligence for which he should be held liable to plaintiff, and
(2) Whether the negligent placing of the Buckeye Landing sign in the highway right-of-way was a cause-in-fact of the injuries suffered by plaintiff.
FACTS
This suit arose out of a vehicular collision which occurred on March 3,1977, at approximately 8:35 A.M. in the intersection of La. 476 and La. 3129 in the southern part of Sabine Parish. Louisiana 3129 begins at this intersection. (See attached sketch prepared by plaintiff.)
The collision occurred between a 1976 Chevrolet pickup truck owned by Ed Jones, Jr., Inc. and being operated by William M. Palmer, and a 1973 two-ton pulpwood truck owned and operated by Wilfred Sepulvado.
Palmer approached the intersection from the east on a gravel road (parish road), and was required to stop by a stop sign located on the right side of that road. Wilfred Sepulvado was approaching that same intersection from the north of La. 476, which is the favored road at this point.
The only eye-witness to the accident is Wilfred Sepulvado[1]. He testified that as he was approaching the intersection, traveling south, approximately 40 miles per hour, he saw Palmer go up to the stop sign on the parish road and stop.
There was a distance of some 43 feet between the stop sign and the east edge of the hard surface of La. 476. It appears that Palmer came to a full stop within this 43-foot area and then proceeded onto La. 476 intending to go through the intersection and continue southwest along La. 476. He did this without looking to his right again after having stopped. Sepulvado’s vehicle struck Palmer’s vehicle broadside in the west (south-bound) travel lane of La. 476, and plaintiff was severely injured.
Plaintiff alleges that Wilfred Sepulvado was guilty of negligence, proximately causing this accident, for failing to see what he should have seen and for failing to keep his vehicle under proper control.
SEPULVADO’S ALLEGED NEGLIGENCE
There is no evidence in the record regarding the posted speed limit on La. 476, in the vicinity of the intersection, and there is some dispute as to how fast Sepulvado was traveling at the time of the accident. However, plaintiff makes no argument that he was speeding.
Plaintiff contends that Sepulvado failed to see what he should have seen, i. e., that plaintiff was moving into the intersection and that a collision was imminent. He notes that Sepulvado testified that after he saw plaintiff stop for the stop sign on his left, he then glanced off to his right for approximately one to two seconds. Plaintiff argues that Sepulvado’s glancing off to the right during this period of time constitutes negligent conduct.
The trial court agreed and found Sepul-vado to have been negligent. That finding, as set out in the trial court’s reasons for judgment, was:
“The physical evidence and the admissions of Mr. Wilfred Sepulvado establish that, more probably than not, the collision and resulting injuries and damages were caused by the negligence of Mr. Wilfred Sepulvado.
*430 “Mr. Sepulvado, who, considering Mr. Palmer’s condition is the only eye witness, can give no complete account of the entire episode, and the Court suggests that he was inattentive. He saw Mr. Palmer stop. He could see his vehicle in its entirety. Then he, Sepulvado, traveling at a rate of speed that probably was nearer 55 mph than 40 mph, looked off to his right. When he finally looked back down the road in front of him, i. e. in the direction in which he was driving, Mr. Palmer’s vehicle was in the east lane of the Scenic Highway. Mr. Sepulvado applied his brakes, skidded the pulpwood truck approximately 57 feet, struck the Palmer vehicle broadside with sufficient force to knock its sideways, 112 feet, down into a ditch.
“Obviously, Mr. Sepulvado did not see the Palmer vehicle from the time it was stopped, near the stop sign, until it was actually in the intersection. During the interim Mr. Sepulvado was gazing off to the west, while his vehicle sped south.
-k ¡Í5
“. .. To look off, out west, completely inattentive to the roadway in front of him, and of the vehicle preparing to enter the intersection constituted negligence, which negligence was, in the opinion of this Court, the proximate cause of the collision and resulting injuries and damages.”
We disagree with the trial court’s finding. Our Supreme Court in Koob v. Cooperative Cab Company, 213 La. 903, 35 So.2d 849 (1948), at page 851, stated the duty of care which must be exercised by the motorist on a favored road. It is:
“The law in this state is well settled that a motorist who is proceeding on a right-of-way street, upon approaching an intersection where traffic is required under a city ordinance, and is warned by stop signs, to come to a complete stop before entering the intersection, should not be held to the. same degree of care and vigilance as if no ordinance existed or stop signs were erected. The danger at such an intersection is less than that at a comer where no stop signs have been erected, and therefore less care is required of the driver on a favored street. The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law.”
[Citations omitted.]
See also Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339 (1959); Dorty v. Zurich Insurance Company, 236 So.2d 837 (La.App. 2 Cir. 1970).
As the driver on the favored thoroughfare, Sepulvado had the right to assume the vehicle on the intersecting street would stop and yield the right of way, and he could continue under this assumption until such time he saw or should have seen that the other vehicle was ignoring the stop sign. Koob v. Cooperative Cab Company, supra; Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964); Fontenot v. Lucas, 228 So.2d 211 (La.App. 3 Cir. 1969), writ denied, 255 La. 279, 230 So.2d 587 (1970); Otillio v. Dolese, 236 So.2d 646 (La.App. 4 Cir. 1970); Clark v. Allstate Insurance Company, 279 So.2d 237 (La.App. 2 Cir. 1973); Triche v. Commercial Union Insurance Company, 329 So.2d 784 (La.App. 1 Cir. 1976).
Furthermore, it is only in the exceptional case where the right-of-way motorist could have avoided the accident by the exercise of the very slightest degree of care that he will be considered guilty of negligence. Bourgeois v. Francois, supra; Otillio v. Dolese, supra; Clark v. Allstate Insurance Company, supra; Triche v. Commercial Union Insurance Company, supra.
*431 The evidence shows that Sepulvado saw plaintiff bring his vehicle to a complete stop before entering the intersection. Sep-ulvado then glanced to his right for approximately one to two seconds. He testified that his reason for doing this was to check for anything that may have been approaching the intersection from that direction. Upon seeing nothing, Sepulvado then turned his attention to La. 476 and saw plaintiff entering the intersection. He hit his brakes, but was unable to stop, and skidded some 57 feet before colliding with plaintiff’s vehicle. We find that Sepulvado was unable to avoid the accident by the exercise of the very slightest degree of care.
In Mauthe v. Gibson, 367 So.2d 1280 (La. App. 3 Cir. 1979), writ denied, 369 So.2d 156 (La.1979), this Court stated, on page 1282, that:
“It is elementary that negligence is determined from the facts and circumstances that existed at the time the accident occurred and if a person acted as a reasonable and ordinarily prudent person under these circumstances, he cannot be found to have been negligent. Pence v. Ketchum, 326 So.2d 831 (La.1976); Fire and Casualty Ins. Co. of Conn. v. Garrick, 312 So.2d 103 (La. App. 1st Cir. 1975), application denied, 313 So.2d 845 (La.1975).”
See also Lafleur v. City of Viile Platte, 367 So.2d 121 (La.App. 3 Cir. 1979), writ denied, 368 So.2d 124 (La.1979).
We find that Wilfred Sepulvado acted as a reasonable and ordinarily prudent person under the circumstances of this case and find that the trial judge was clearly wrong in concluding otherwise. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
IS LAST CLEAR CHANCE DOCTRINE APPLICABLE?
The trial court, in its reasons for judgment, indicates the doctrine of last clear chance was applicable and that Sepulvado had the last clear chance of avoiding the accident.
To apply last clear chance, both parties must be found negligent. Only if both are negligent is the doctrine of last clear chance an available tool of the plaintiff. Ainsworth v. Bituminous Casualty Corp., 379 So.2d 1187 (La.App. 3 Cir. 1980), writ denied, 381 So.2d 1233, 1234 (La.1980); Dunn v. Bolden, 372 So.2d 785 (La.App. 2 Cir. 1979); Champagne v. McDonald, 355 So.2d 1335 (La.App. 3 Cir. 1978); Stone, 12 La. Civil Law Treatise: Tort Doctrine § 58(e) (1977).
We hold that the doctrine of last clear chance is unavailable to plaintiff as we have found no negligence on the part of the defendant, Wilfred Sepulvado.
However, even if we were to assume that Sepulvado was negligent and plaintiff contributorily negligent, we would be unable to say that the criteria for application of the doctrine of last clear chance were satisfied. The court, in Jackson v. Watson, 360 So.2d 582 (La.App. 4 Cir. 1978), stated these on page 586 as follows:
“First, it must be shown plaintiff was in a position of peril of which he was unaware or from which he was unable to extricate himself. Second, the defendant was in a position to discover plaintiff’s peril. And third, when defendant did in fact discover plaintiff’s peril, he had reasonable opportunity to avoid the accident.”
The evidence shows that when Sepulvado did in fact discover plaintiff’s peril, he had no reasonable opportunity to avoid the accident. Sepulvado had approximately two seconds to perceive and react to the situation presented by plaintiff’s entering of the intersection. He then applied his brakes and skidded 57 feet in less than one second before the collision. Plaintiff presented no evidence that would indicate that a normal driver could have avoided this accident given the same set of circumstances.
THE CAUSAL RELATIONSHIP OF THE BUCKEYE LANDING SIGN TO THE ACCIDENT.
The second issue is whether the trial court erred in finding that the placement of *432 the Buckeye Landing sign was not causally related to the accident.
Plaintiff has also sued Claude Mason, Allie Cohen, and Albert Cohen, individually and d/b/a Buckeye Landing on Toledo Bend, together with their liability insurer, Houston General Insurance Company. The defendants had erected their sign measuring 8' X 3' 3V2" some 34 feet from the traveled portion of La. 476. The sign was situated parallel to the gravel road on which plaintiff was traveling. The stop sign which plaintiff encountered was located close to this sign. The Buckeye sign would obstruct a driver’s vision to his right down La. 476, if he stopped his vehicle such that the front end was even with the stop sign.
Plaintiff’s contention is that as he approached this intersection, he came to a stop at a point where the front of his pickup truck was approximately even with the stop sign and looked to his right. He could see approximately 1200 feet up La. 476, except for the portion obstructed from view by the Buckeye sign. However, plaintiff contends that the large sign, being where it was, in the wide open space, was deceptive, and plaintiff did not actually realize that it constituted an obstruction to his vision. Plaintiff further contends that, seeing no traffic coming from the north (Sepulvado presumably being on that portion of the highway that was obstructed from plaintiff’s view by the Buckeye sign), it was reasonable for him to travel within the 43-foot area (the distance from the stop sign on the parish road to the edge of the traveled portion of La. 476) up to the intersection and to enter it without looking to his right.
Plaintiff argues that the sign, which allegedly obstructed his vision, was a cause-in-fact of the accident.
We agree with the trial court that the Buckeye sign was on the State Highway right-of-way, and illegally so. Also, we agree with the trial court that the Louisiana Department of Highways was negligent for allowing the sign to be placed on the highway right-of-way, and that the individual who erected the sign was negligent in placing it there.
However, in order to establish liability on the part of these defendants, plaintiff, Palmer, must not only show that the defendants’ conduct was tortious, but also that the acts complained of were a cause-in-fact of his damages. Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962); Brown v. Louisiana Department of Highways, 373 So.2d 605 (La.App. 3 Cir. 1979), writ denied, 376 So.2d 1269 (La.1979); Ducote v. Voorhies, 350 So.2d 1289 (La.App. 3 Cir. 1977); Ganey v. Beatty, 391 So.2d 545 (La.App. 3 Cir. 1980).
The initial inquiry in any determination of negligence on the part of a defendant is whether any causal relationship existed between the harm to the plaintiff and the defendant’s allegedly negligent conduct. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Ganey v. Beatty, supra.
This Court, in State Farm Mutual Insurance Company v. South Central Bell Telephone Company, 343 So.2d 758 (La.App. 3 Cir. 1977), had occasion to confront this issue of causation. There we stated, at pages 759 and 760 that:
“A cause-in-fact is a substantial factor in the chain of events culminating in an accident. It is a “necessary antecedent”. Without it the accident would not have taken place. If the accident would have occurred, regardless of such cause, such cause is not a cause-in-fact. Dixie Drive-It-Yourself System v. American Beverage Co., supra.”
Therefore, if the accident in this case would have occurred, irrespective of the negligence of the defendants, then their negligence is not a substantial factor or cause-in-fact.
Plaintiff uses some fairly vague testimony by Sepulvado in his attempt to prove that he did indeed stop at a point where the sign obstructed his vision. He cites Foster v. Employers Liability Assurance Corporation, 187 So.2d 12 (La.App. 1 Cir. 1966), for the proposition that a trial court should believe a statement made to a state police *433 man at the scene of the accident, which conflicts with later statements made by the same person. Plaintiff alleges that Sepul-vado made a statement to the investigating officer to the effect that plaintiff had stopped where his vision would be obstructed.
We voice no opinion on the effect of the case cited above. However, we note that the deposition by the state policeman who investigated the accident contains no conclusive testimony by either the policeman or Sepulvado as to exactly where plaintiff stopped. The policeman, in fact, specifically testified that all that Sepulvado told him was that plaintiff stopped and then proceeded across the intersection.
The trial court, on the other hand, bases its finding (that plaintiff stopped where his vision was unobstructed) on the testimony of Sepulvado to the effect that he could see plaintiff’s entire vehicle when it stopped. This finding is adequately supported by the record.
To determine cause-in-fact, courts will carefully scrutinize all the evidence, and those acts will be adjudged causes-in-fact when it is found that more probably than not they were necessary ingredients of the accident. Stated otherwise, an act will be deemed a cause-in-fact of an accident only when, viewed in the light of all the evidence, it is concluded that it is a substantial factor without which the accident would not have happened. Laird v. Travelers Insurance Company, 263 La. 199, 267 So.2d 714 (1972); Follins v. Barrow, 354 So.2d 609 (La.App. 1 Cir. 1977), writ denied, 356 So.2d 434 (La.1978); Ganey v. Beatty, supra.
We believe that the Buckeye sign may have obstructed plaintiff’s view to some degree as he approached the intersection. However, plaintiff’s vision was not obstructed by that sign for a distance of 43 feet from the edge of La. 476 to the area where plaintiff had stopped. He need only to have looked to his right again as he proceeded towards the intersection to have had an unobstructed view of La. 476. We hold that the negligent placing of the Buckeye sign was an insignificant factor in bringing about the injuries suffered by plaintiff, and therefore, not a cause-in-fact of those injuries.
We have found it unnecessary to discuss whether plaintiff was guilty of contributory negligence in causing this accident because of our findings of no actionable negligence on the part of any defendants. We note that plaintiff violated LSA-R.S. 32:123(B) which provides:
“B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.”
(Emphasis provided.)
Plaintiff has made no assignment of error with regard to the trial court’s dismissal of his demands against the L. J. Ernest Company, Inc. and Richard Bruce, with prejudice.
For the above and foregoing reasons, the judgment of the trial court holding Wilfred Sepulvado negligent, and, together with his insurer, liable to plaintiff, is reversed. The judgment of the trial court in favor of the remaining co-defendants, Allie Cohen, Albert Cohen, Claude Mason, Houston General Insurance Company, State of Louisiana, Department of Transportation and Development, L. J. Ernest Company, Inc. and Richard Bruce and against plaintiff, William M. Palmer, dismissing the demands of plaintiff with prejudice as to said defendants is affirmed.
All costs of this appeal and at trial level are assessed against plaintiff-appellant.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.

*434

. Plaintiff sustained severe head injuries in the accident, and at the time of trial suffered from retrograde amnesia and consequently could not testify as to what transpired at the time of the accident.