550 So.2d 352 (1989)
Jennifer VALIN, et al., Plaintiffs-Appellees,
v.
Gwendolyn S. BARNES, et al., Defendants-Appellants.
No. 88-533.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
Writ Denied December 1, 1989.
*353 Bruce A. Gaudin, Opelousas, for plaintiffs-appellees.
Broderick C. DeJean and Sherman Stanford, Opelousas, for defendant-appellant Auzenne.
Brinkhaus, Dauzat, Jimmy L. Dauzat, Opelousas, for defendant-appellant State.
David Kaufman, Melissa Reardon, Lafayette, Sandoz, Sandoz & Schiff, Leslie Schiff, Opelousas, for defendant-appellees.
Before GUIDRY, LABORDE and KNOLL, JJ.
GUIDRY, Judge.
This suit was instituted as the result of a three car collision which occurred on Louisiana Highway 749 (commonly known as the Airport Road) in St. Landry Parish, Louisiana. On the morning of January 10, *354 1986, Mrs. Jacquelyn Auzenne[1] accompanied by her three year old son, Casey, was driving a 1979 Oldsmobile in a southerly direction on Airport Road. The Auzenne vehicle was struck in the rear quarter panel by a 1979 Lincoln Continental driven by Mrs. Gwendolyn Barnes, which entered the highway from a Canal service station parking lot located on the east side of the highway. Upon impact, the Auzenne vehicle was knocked onto the west shoulder of the road, reentered the southbound lane, crossed the center line and struck a 1977 Plymouth Fury which was being driven by Mrs. Jennifer Valin in a northerly direction on the highway. Mrs. Valin sustained serious personal injuries. Mrs. Auzenne and her minor son, Casey, received relatively minor injuries.
Mrs. Valin and her husband, William, instituted this suit for damages against Gwendolyn Barnes and her insurer, Safeway Insurance Company (hereafter Safeway); Jacquelyn Auzenne and her insurer, State Farm Mutual Automobile Insurance Company (hereafter State Farm); and, General Agents Insurance Company of America (hereafter General Agents), the alleged UM insurer of the vehicle driven by Mrs. Valin and which was owned by Southern Automotive and Truck Center, Inc. (hereafter Southern Automotive). Jacquelyn Auzenne and her husband, James, filed a cross-claim and reconventional demand against Mrs. Barnes, her husband, Morris J. Barnes, State Farm, Jennifer Valin, her husband, William, Southern Automotive, General Agents and State Farm as the alleged UM insurer of the Auzennes. Pursuant to motions for summary judgment, the claims against General Agents and Southern Automotive, as well as the Auzennes' claim against the Valins, were dismissed by the trial court.
After a trial on the merits, the trial court concluded that Gwendolyn Barnes was 80% at fault and Jacquelyn Auzenne 20% at fault in causing the accident. Pursuant to judgments signed on February 1, 1988, the trial court rendered judgment as follows:
(a) Judgment in favor of Jennifer Valin and against Gwendolyn Barnes, Safeway (up to its policy limits of $10,000.00 plus interest), Jacquelyn Auzenne and State Farm (up to its policy limits of $50,000.00 plus interest), in solido in the amount of $76,858.57;
(b) Judgment in favor of William Valin for loss of consortium and against Gwendolyn Barnes, Safeway, Jacquelyn Auzenne and State Farm, in solido in the amount of $2,000.00; and,
3. Judgment in favor of James and Jacquelyn Auzenne against Gwendolyn Barnes and Safeway, in solido, on behalf of the minor child, Casey, in the amount of $800.00 and past medical expenses in the amount of $2,340.00; and, damages for Mrs. Auzenne's injuries in the amount of $2,400.00, each figure representing 80% of the damages sustained, the recovery being reduced 20% to reflect the percentage of negligence assigned to Mrs. Auzenne.
Court costs were assessed 80% to Gwendolyn Barnes and Safeway and 20% to Jacquelyn Auzenne and State Farm. State Farm appealed suspensively. James and Jacquelyn Auzenne appealed devolutively as to any judgment above State Farm's policy limits.

FACTS
At approximately 7:45 a.m. on January 10, 1986, Jacquelyn Auzenne, accompanied by her young son, Casey, was driving a 1979 Oldsmobile in a southerly direction on Airport Road, a two lane blacktopped road, at an approximate speed of 25-30 miles per hour. The Airport Road curves sharply to the left for southbound traffic a short distance north of the accident site. The posted speed limit for the curve was 25 miles per hour. After successfully negotiating the curve, Mrs. Auzenne's vehicle was suddenly struck on its left rear quarter panel by the front right side of a 1979 Lincoln Continental driven by Mrs. Gwendolyn Barnes which entered the Airport Road from a Canal service station located on the east side of the highway only a second or *355 two before impact. The impact propelled the Auzenne vehicle out of control and onto the west shoulder of the highway after which it reentered the highway crossed the center line and collided with an automobile which was being driven by Jennifer Valin in its proper lane of travel.
At the time of the accident, the weather was overcast, it was drizzling and the highway was wet. The headlights on the Barnes and Valin vehicles were on but the headlights on the Auzenne vehicle were off.[2]
On appeal, State Farm and the Auzennes urge that the trial court erred when it determined that Jacquelyn Auzenne was 20% at fault in causing the accident. Additionally, the Auzennes urge trial court error in the following particulars:
1. The trial court erred when it found Jacqueline Auzenne entitled to only $3,000.00 in general damages.
2. The trial court erred when it failed to award Jacqueline Auzenne any damages for future medical expenses.
3. The trial court erred when it failed to award James Auzenne any damages for loss of consortium.
4. The trial court erred when it found Casey Auzenne entitled to only $1,000.00 in general damages.

NEGLIGENCE OF MRS. AUZENNE
We first consider appellants' contention that the trial court erred in finding Jacquelyn Auzenne 20% at fault in causing the accident.
Regarding the negligence of Jacquelyn Auzenne, the trial court stated, in its written reasons for judgment, as follows:
"The amount of negligence attributable to the Auzenne vehicle was based in part on the amount of negligence attributable to the Barnes vehicle. Additionally, though on a favored highway, she had some duty of lookout and a full view of the area from which the Barnes car approached. She did not see the Barnes car prior to impact."
Our brethren of the Second Circuit in Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App. 2d Cir.1986), succinctly stated the well established jurisprudential rules relative to the respective duties of a motorist entering a roadway from a private driveway and those of a motorist traveling on a favored street:
"A motorist who is about to enter a roadway from a private driveway is required to yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. LRS 32:124. Unusual, extreme, and high care toward favored traffic is required of such a motorist under the case law. See Travelers Insurance Company v. Harris, 294 So.2d 588 (La.App. 4th Cir.1974); Holland v. United States Fidelity & Guaranty Co., 131 So.2d 574 (La.App. 2d Cir.1961); Garcia v. Anchor Casualty Company, 148 So.2d 371 (La.App. 1st Cir.1962). Conversely, the duty of the driver on the favored street toward the intruding motorist is the much lesser ordinary care and that driver generally may rely on the assumption or presumption that those vehicles entering the roadway from less favored positions such as a private drive will not drive into the path of favored traffic. The motorist who is otherwise proceeding lawfully on the favored street is not required to look out for or search in anticipation of careless drivers who might enter his right of way from a private driveway in violation of the statute. Gutierrez v. Columbia Casualty Co., 100 So.2d 537 (Orl.App. 1958); Vidrine v. Simoneaux, 145 So.2d 400 (La.App. 3d Cir.1962). The presumption or assumption may not be relied on by a motorist who is proceeding unlawfully before or after he sees the intruding vehicle. See Joseph v. Boudreaux, 230 So.2d 352 (La.App. 1st Cir.1969); Cole v. Maryland Casualty Company, 205 So.2d 863 (La.App. 3d Cir.1968); and Blashfield, Automobile Law and Practice, § 120.27 (1970), and Louisiana cases cited therein."
*356 Additionally, in Palmer v. State, 393 So.2d 427 (La.App. 3rd Cir.1980), writ denied, 399 So.2d 601 (La.1981), a panel of this court stated:
"... the driver on the favored thoroughfare, Sepulvado had the right to assume the vehicle on the intersecting street would stop and yield the right of way, and he could continue under this assumption until such time he saw or should have seen that the other vehicle was ignoring the stop sign. Koob v. Cooperative Cab Company, supra [213 La. 903, 35 So.2d 849 (1948) ]; Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964); Fontenot v. Lucas, 228 So.2d 211 (La.App. 3 Cir.1969), writ denied, 255 La. 279, 230 So.2d 587 (1970); Otillio v. Dolese, 236 So.2d 646 (La.App. 4 Cir. 1970); Clark v. Allstate Insurance Company, 279 So.2d 237 (La.App. 2 Cir. 1973); Triche v. Commercial Union Insurance Company, 329 So.2d 784 (La. App. 1 Cir.1976).
Furthermore, it is only in the exceptional case where the right-of-way motorist could have avoided the accident by the exercise of the very slightest degree of care that he will be considered guilty of negligence. Bourgeois v. Francois, supra; Otillio v. Dolese, supra; Clark v. Allstate Insurance Company, supra; Triche v. Commercial Union Insurance Company, supra."
The record reflects that Jacquelyn Auzenne was proceeding lawfully in a southerly direction on Airport Road and had just successfully negotiated a curve when her vehicle was suddenly struck in the rear quarter panel by the right front (near the signal light) of the Barnes vehicle which had entered the road from a private parking lot located on the east side of the road. Upon impact, Auzenne instantly lost control of her vehicle and eventually struck a northbound vehicle being driven by Jennifer Valin. Jacquelyn Auzenne testified that immediately upon entering the curve, there was to her left an area of tall grass and weeds on the east side of the road which obstructed her view of northbound traffic. She stated that she did not see the Barnes vehicle while it was in the parking lot nor did she see the Barnes vehicle enter the northbound lane. Auzenne stated that she was aware that vehicles entered and exited the Canal service station parking lot during the particular time she was proceeding down Airport Road.
Gwendolyn Barnes testified that she had stopped for gas at the Canal service station. After obtaining gas, she drove to the edge of the roadway and came to a complete stop. Intending to head south, she stated that immediately upon looking to her right (over her right shoulder as she was at an angle), she entered the roadway, crossed the northbound lane of Airport Road and struck the Auzenne vehicle on the rear quarter panel near the center line of the highway causing it to careen out of control. She stated that she was traveling 5-10 miles per hour at the time and did not see the Auzenne vehicle prior to the impact. Additionally, she stated that her view to the north was unobstructed to a point "just a bit beyond the curve". Most importantly, she testified that the accident occurred one to two seconds after she began her entry onto the roadway, i.e., it took her one to two second seconds to angle across the width of the northbound lane, an approximate distance of 12 to 14 feet.
The testimony of Jennifer Valin corroborates the time frame of the sequence of events leading to the initial collision. She testified that she entered the Airport Road from Bernard Street, which was only a short distance south of the Canal service station. After proceeding a short distance in a northerly direction, she observed the Barnes vehicle leaving the parking lot and estimated that the Barnes vehicle was traveling approximately five miles per hour. Upon observing the Barnes vehicle edging out, she immediately looked in her rearview mirror for about one second and when she returned her focus to the road ahead, the Barnes and Auzenne vehicles were colliding. She then slowed her vehicle but was unable to take evasive action before the Auzenne vehicle struck her vehicle.
There was also evidence adduced at trial from William Valin, who conducted measurements near the location of the accident, *357 suggesting that Jacquelyn Auzenne would have had an unobstructed view of the Barnes vehicle for 150 to 200 feet prior to impact.
Although the weather conditions at the time of the accident were not ideal, they were not severe. Additionally, Auzenne was proceeding lawfully down the Airport Road, i.e., she was traveling in her proper lane and within the speed limit. Despite these facts and the fact that Jacquelyn Auzenne was familiar with the potential traffic near the accident scene, it cannot be said that she was presented with any "exceptional circumstances" at the time of the accident.
The evidence clearly establishes that Jacquelyn Auzenne had full view of the parking lot but could not explain why she did not see the Barnes vehicle stopped at the edge of the parking lot. However, even had she seen the Barnes vehicle stopped near the roadway, she was under no duty to anticipate that the Barnes vehicle would violate her right of way. Rather, she was entitled to assume that Barnes would yield the right of way until such time as she saw or should have seen that Barnes would ignore her duty. Thus, the issue becomes whether Auzenne's failure to see the Barnes vehicle prior to the collision was a cause in fact of the accident. Stated another way, under the circumstances, could Auzenne have taken any action to avoid the accident at the point in time when she should have seen that Barnes would violate her right of way.
The uncontradicted evidence indicates that the Barnes vehicle entered the roadway only one to two seconds prior to the collision. This time frame is corroborated by the distance traveled by the Barnes vehicle after entry onto the roadway and the areas of damage on the two vehicles. During this period, the Barnes vehicle traversed the northbound lane, a distance of approximately 12 to 14 feet. This equates to a vehicle speed of approximately 7.33 feet per second on the low estimate (5 mph) and 14.66 feet per second on the high estimate (10 mph). Considering the estimates of the speed of both vehicles, the areas of damage on the vehicles, the span of time from the entry of the Barnes vehicle onto the highway to the collision and the normal reaction time of the operator of an automobile[3], it is obvious to us that Auzenne could not, under the circumstances, have taken any evasive action. Therefore, in our view, under the circumstances, Auzenne's failure to observe the Barnes vehicle prior to the accident was not a cause in fact of the accident and the trial court's conclusion to the contrary constitutes clear error. Accordingly, for these reasons, we will reverse the judgment of the trial court insofar as it casts Jacquelyn Auzenne with 20% fault.

GENERAL DAMAGE AWARD TO MRS. AUZENNE
The trial judge stated in his reasons for judgment that he felt Jacquelyn Auzenne greatly exaggerated her injuries. He awarded her $3,000.00 in general damages but reduced the award to $2,400.00 to reflect her percentage of fault. Appellant urges us to increase the latter award contending that it is lower than the lowest amount awardable based upon a reasonable evaluation of the record evidence. We disagree and affirm.
The record reflects that, as a result of the accident, Jacquelyn Auzenne suffered a bruised leg, stiff and sore neck and lower back, headaches and an aching right shoulder. She did not seek immediate medical attention. She complained that her injuries affected her ability to perform secretarial duties and housework. She stated that she attempted to alleviate her symptoms through the use of aspirin, bedrest, hot baths, felt braces, etc., but without success and sought treatment from Dr. John Ortego, a chiropractor. X-rays taken by Dr. *358 Ortego were normal. Dr. Ortego diagnosed that Mrs. Auzenne suffered from (1) post-traumatic cervical strain-sprain with associated cranial syndrome (the injury to her neck was causing headaches); and (2) post-traumatic lumbar sprain-strain (intermittent pain and stiffness in her low back). Dr. Ortego treated Mrs. Auzenne for seven months post accident. During this course of treatment, Mrs. Auzenne's headaches and neck pain were resolved. However, she continued to experience low back pain. Dr. Ortego opined she would continue to "... experience periods of intermittent pain and stiffness in her low back, especially after periods of prolonged physical stress, such as housework, lifting or prolonged sitting".
In May of 1986, because she was having difficulty sleeping and was overreacting to routine job stress, Mrs. Auzenne consulted Dr. Gary Byrd, a psychiatrist. Dr. Byrd administered an MMPI test which indicated that Mrs. Auzenne was candid, cooperative and without serious psychological problems. He diagnosed Mrs. Auzenne as suffering from difficulty of psychological adjustment as a result of the accident. He described his treatment of Mrs. Auzenne as "reassurance and encouragement towards health and ability". Dr. Byrd opined that it was probable that Mrs. Auzenne would require some type of psychological support in the future. He stated that he would opt that she see a psychologist or master level social worker eight to ten times with him assisting in a supervisory capacity.
Although Mrs. Auzenne suffered some pain and discomfort, there is no objective medical evidence in the record to support a conclusion that she suffered anything other than minor physical injuries. There is some evidence suggesting that she suffered some minor stress problems. As aforestated, the trial judge concluded that Mrs. Auzenne greatly exaggerated her problems. We can find no clear error in this conclusion.
We find no clear abuse of discretion in the trial court's general damage award of $2,400.00, which, by reason of our previous ruling, will be increased to $3,000.00.

FUTURE MEDICAL EXPENSES OF MRS. AUZENNE
Mrs. Auzenne urges that the trial court erred when it failed to award her special damages for future medical expenses. The trial court apparently rejected Dr. Byrd's suggestion that Mrs. Auzenne might in the future require some type of psychological support services. Considering the very minor nature of the injuries suffered by Mrs. Auzenne, we can find no clear error in the trial court's conclusion. The trial court has discretion to accept or reject medical opinion and may substitute his own common sense and judgment when such substitution appears warranted by the evidence as a whole. Myers v. Ford Motor Co., 486 So.2d 1030 (La.App. 2d Cir. 1986); Tyler v. Richardson, 476 So.2d 899 (La. App. 2d Cir.1985), writ denied, 478 So.2d 907 (La.1985).

LOSS OF CONSORTIUM
James Auzenne contends that the trial judge erred when it failed to award any damages to him for loss of consortium.
In disallowing this claim, the trial court stated:
"The denial of consortium to the Auzenne husband was because of the minor nature of the wife's injuries. I do not think he had a legally cognizable claim. The consortium act requires more than the minor injuries sustained by the [sic] Mrs. Auzenne."
We find no clear error in this conclusion.

GENERAL DAMAGE AWARD TO THE MINOR CHILD, CASEY AUZENNE
Appellants finally contend that the amount of the general damage award to the minor child, Casey Auzenne, is inadequate. The record reflects that Casey was three years old at the time of the accident. As a result of the accident, he sustained a bruised forehead. No medical treatment was sought on his behalf. The trial judge's general damage award is, in our opinion, more than adequate particularly considering it will be increased by reason of our previous ruling.

*359 CONCLUSION
For the above and foregoing reasons, we reverse and set aside the trial court judgment insofar as it decrees Jacquelyn T. Auzenne 20% at fault. In conformance with this determination, we amend and recast the trial court judgment as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of JENNIFER VALIN and against GWENDOLYN S. BARNES and SAFEWAY INSURANCE COMPANY (up to its policy limits of $10,000.00, plus interest), in solido, for the full and true sum of SEVENTY-SIX THOUSAND EIGHT HUNDRED FIFTY-EIGHT AND 57/100 ($76,858.57) DOLLARS, plus interest from date of judicial demand until paid in full.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of JAMES AUZENNE and JACQUELYN THIERRY AUZENNE and against GWENDOLYN S. BARNES and SAFEWAY INSURANCE COMPANY in solido as follows: (a) on behalf of the minor child, CASEY AUZENNE, in the full sum of ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS, (b) on behalf of the community as reimbursement for medical expenses in the full sum of TWO THOUSAND NINE HUNDRED TWENTY-FIVE AND NO/100 ($2,925.00) DOLLARS, and (c) on behalf of JACQUELYN THIERRY AUZENNE for her injuries the full sum of THREE THOUSAND AND NO/100 ($3,000.00) DOLLARS, plus interest on each sum at the legal rate from the date of filing of the AUZENNE petition.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of WILLIAM VALIN and against GWENDOLYN S. BARNES and SAFEWAY INSURANCE COMPANY, in solido, for the full and true sum of TWO THOUSAND AND NO/100 ($2,000.00) DOLLARS, plus interest from date of judicial demand until paid in full.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the following expert fees are assessed as costs of court: (a) Dr. Thomas Butaud, $350.00; (b) Dr. Ladislas Lazaro, III, $400.00; (c) court reporter fee for Drs. Butaud and Lazaro, $249.00; (d) Dr. Rick Ortego, $300.00; (e) Dr. Gary Byrd, $300.00. Costs are assessed to Gwendolyn S. Barnes and Safeway Insurance Company. We assess all costs of this appeal to Gwendolyn S. Barnes and Safeway Insurance Company.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] Jacquelyn Auzenne is alternately referred to in the transcript as Jackeline Auzenne.
[2] This is of no moment as it was not established at trial that vehicles on the highway were not clearly discernible at a distance of 500 feet ahead. La.R.S. 32:301.
[3] In Franicevich v. Lirette, 124 So.2d 318 (La. App. 4th Cir.1960), reversed on other grounds, 241 La. 466, 129 So.2d 740 (1961), reaction time is defined as "the time of transference from instinctive realization to action when a person, without any hint that an emergency is about to confront him, is suddenly required to take action to avert the catastrophe which the emergency seems to present".